UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA WARD-JOHNSON,<br><br>*Plaintiff*,<br><br>v.<br><br>ELISABETH FELEKE, Acting President and Chief Executive Officer, U.S. African Development Foundation,<br><br>*Defendant*. | Civil Action No. 1:19-cv-0534 (CJN) |

## MEMORANDUM OPINION

Alicia Ward-Johnson worked as a term employee at the U.S. African Development Foundation for two years. *See generally* Compl., ECF No. 1. Proceeding *pro se*, she alleges that her supervisors discriminated and retaliated against her on the basis of race, color, sex, and disability in violation of federal law. *See id.* The Foundation previously moved to dismiss four of the Complaint's five counts. *See generally* Def.'s Partial Mot. to Dismiss, ECF No. 11. The Court granted that motion in part, dismissing three of them. *See* Order, ECF No. 18; Memorandum Opinion, ECF No. 19. The Foundation now moves for summary judgment on the two remaining counts. *See* Def.'s Mot. for Summary Judgment, ECF No. 32. For the reasons that follow, the Court grants the Foundation's motion.

1

## I.     Factual and Procedural Background

The U.S. African Development Foundation, a government corporation established by Congress in 1980, participates in a federal program known as the Pathways Recent Graduates Program. *See* African Development Foundation Act, Pub. L. No. 96-533, 94 Stat. 3151 (1980) (codified at 22 U.S.C. §§ 290h to 290h-9); *see* Declaration of C.D. Glin ("Glin Decl."), ECF No. 32-3 at ¶ 3. The Pathways Program represents an entry-level hiring program, offering federal employment opportunities to recent college graduates and other eligible candidates. *See* Glin Decl. ¶ 3. Appointments under the Pathways Program "may not exceed 2 years," 5 C.F.R. § 362.105(g), though an agency may, at its discretion, convert an appointment into a permanent position at the end of the term, 5 C.F.R. § 362.107; *see also Harrison v. United States*, 120 Fed. Cl. 533, 550 (2015).

In November 2015, the Foundation hired Ward-Johnson, an African-American woman, under the Pathways Program to serve as an Auditor in the Foundation's Office of Internal Audits. *See* Compl. ¶¶ 1, 46–47. The employment contract made clear that Ward-Johnson's appointment expired in November 2017. *See* Recent Graduates Program Participant Agreement, ECF No. 32-7. It also specified that the Foundation retained the discretionary authority to convert Ward-Johnson's temporary appointment into a permanent one at the conclusion of her appointment. *Id.*; *see also* Glin Decl. ¶ 4.

In her role as an Auditor, Ward-Johnson audited financial statements to ensure appropriate allocation of the Foundation's funds. *See* Pl.'s Deposition ("Pl.'s Dep."), ECF No. 32-6 at 9:15-22. Ellen Teel, a white woman, served as Ward-Johnson's supervisor. *Id.* at 9:23-25. According to Ward-Johnson, Teel engaged in "odd behavior" starting her first couple weeks on the job. *Id.* at 16:2-3. Teel's behavior, according to Ward-Johnson, included "[i]nappropriately calling [her] after work hours while intoxicated, calling [her] desk excessively and repeatedly during work

2

hours, keeping [her] in [Teel's] office for 2 to 3 hours at a time [to discuss Teel's personal life despite Ward-Johnson's requests to go back to her desk], [and] following [her] to the restroom and other areas within the building." Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 13 at 3. Ward-Johnson alleges that these incidents happened almost every day over her two-year tenure at the Foundation, sometimes taking her away from her work for several hours of the day. *Id.*

Ward-Johnson complained to some of her colleagues about Teel's behavior. *Id.* The complaints brought about no change according to Ward-Johnson. *Id.* So she filed an informal equal employment opportunity complaint with the Foundation in August 2016. *See* Compl. ¶ 13. A month or so later, Ward-Johnson voiced her concerns about Teel to the Foundation's president, C.D. Glin. *See id.* ¶ 14; Pl.'s Opp'n at 5–6. In November, having received no assistance in changing Teel's behavior, Ward-Johnson formalized her administrative complaint. *Id.* ¶ 36; *see* Formal Compl. of Discrimination, ECF No. 32-12.

That same month, Ward-Johnson became eligible for conversion from a term appointment to a permanent position, but, as Ward-Johnson sees it, the Foundation took no steps to accomplish the conversion. *See* Compl. ¶ 38; Pl.'s Opp'n at 6. Instead, the Foundation, from Ward-Johnson's perspective, not only sought ways to terminate her but also retaliated against her for filing and formalizing her EEO complaint. *See* Compl. ¶¶ 38–39.

As Ward-Johnson's two-year anniversary at the Foundation drew near, Glin informed her that, due to "budgetary constraints," the Foundation had decided to permit her term to expire rather than convert her to a permanent position. *Id.* ¶ 46. Ward-Johnson believes that the explanation amounted to nothing more than pretext. *Id.*

3

With her term set to expire, Ward-Johnson decided to apply for a position as a Financial Management Analyst. *Id.* ¶¶ 47–48. The hiring manager forwarded Ward-Johnson's application to Chief Financial Officer Mathieu Zahui. *Id.* ¶¶ 50–52. After conducting a round of interviews, the Foundation opted to hire someone else. *Id.* ¶ 52; Pl.'s Opp'n at 8.

Ward-Johnson filed this *pro se* lawsuit in March 2019. She alleges that she suffered unlawful retaliation based on her prior EEO activity and unlawful discrimination based on her employer creating a hostile work environment. *See generally* Compl., ECF No. 1. The government moved to dismiss four of the Complaint's five counts. *See* Def.'s Partial Mot. to Dismiss, ECF No. 11. The Court granted the government's motion in part and dismissed three of the five counts. *See* Order, ECF No. 18; Memorandum Opinion, ECF No. 19. The two surviving counts are (1) the claim that Teel created a hostile work environment based on Ward-Johnson's race and sex and (2) the claim that the Foundation retaliated against Ward-Johnson for her prior EEO activity when (a) it decided not to convert her term appointment under the Pathways Program into a permanent position and when (b) it did not hire her into a Financial Analyst position.

## II.     The Summary Judgment Standard

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute about a material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party has met its burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" to defeat the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Though courts "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted), the nonmoving party must show more than "[t]he mere existence of a scintilla

4

of evidence in support of" its position, *Anderson*, 477 U.S. at 252.  In other words, "there must be evidence on which the jury could reasonably find for [the nonmoving party]." *Id.*

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." R*eeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255).  Yet "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Although "summary judgment must be approached with specific caution in discrimination cases, a plaintiff is not relieved of [her] obligation to support [her] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Baylor v. Powell*, 459 F. Supp. 3d 47, 53 (D.D.C. 2020) (quotation omitted).  As "conclusory allegations" and "unsubstantiated speculation" will not suffice to create genuine issues of material fact, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bell v. E. River Fam. Strengthening Collaborative, Inc.*, 480 F. Supp. 143, 149 (D.D.C. 2020) (quotation omitted).

### III. Ward-Johnson's Hostile Work Environment Claim under Title VII

Section 703(a)(1) of Title VII makes it an "unlawful employment practice" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  In addition to prohibiting unlawful discrimination, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993), Title VII also prohibits employers from creating or condoning a hostile or abusive work environment, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (holding that Title VII makes it unlawful for an employer to require "people to work in a discriminatorily

hostile or abusive environment"). A plaintiff asserting a hostile work environment claim must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* An "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Courts looks to the "totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance" to determine whether a hostile work environment exists. *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008); *Durant v. D.C. Gov't*, 875 F.3d 685, 700 (D.C. Cir. 2017). Sporadic incidents of rude or unprofessional behavior will not give rise to a claim—severe or pervasive means just that. *Barbour v. Browner*, 181 F.3d 1342, 1348–49 (D.C. Cir. 1999).

In Count I of her Complaint, Ward-Johnson alleges that Teel created a hostile work environment by calling her after hours while intoxicated, following her around the building, and making her come to Teel's office to discuss personal matters for hours at a time. *See* Compl. ¶¶ 1–22; Pl.'s Opp'n at 2–4. At the motion to dismiss stage, the Court declined to dismiss Count I on the grounds that a white "supervisor who follows her African-American, female employees (including Plaintiff) around the building all day, forces them into her office for hours without a work-related purpose, and calls them in their homes in the evening to discuss personal matters may very well have created a hostile work environment if the effect of such behavior is to alter the conditions of employment for her workers." Mem. Op. at 12. The Court, however, noted that it "may be the case that Ward-Johnson will not be able to carry her burden of proof on summary judgment; the Foundation may have an adequate, non-discriminatory explanation for Teel's

6

behavior, Ward-Johnson's allegations may not be entirely accurate, or there may not be enough support for Ward-Johnson's allegation that Teel acted because of Ward-Johnson's race or sex rather than merely being an abnormal boss." *Id.* at 12–13.  The Court now concludes that Ward-Johnson has not carried her burden at the summary judgment stage.  Two independent justifications support this conclusion.

First, Ward-Johnson does not complain of a "workplace [] permeated with discriminatory intimidation, ridicule, and insult" so "extreme" that it amounts to a change in the terms, conditions, or privileges of employment.  *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).  In response to Ward-Johnson describing her experience with Teel during her deposition, counsel for the Foundation asked:  "you've listed a number of things, but it seems like in most of these [Teel is] trying to just get in touch with you and talk with you, as well as you mentioned that she called you after hours and also followed you to the restroom.  Is that a . . . fair description of what happened, or am I leaving anything out?"  Ward-Johnson's Deposition, ECF No. 32-6 at 52:14-21.  Ward-Johnson replied to the question by stating that "*I would say that's a fair description*."  *Id.* (emphasis added).  She followed up by stating that:  "I will say this -- and I'm going to be 100 percent honest.  Ms. Teel is a very nice individual.  She's a very sweet woman.  Ms. Teel has some issues.  I don't know if it's -- I could be out of place for saying it, I don't know, maybe some type of psychological issues or something.  She seems a little off."  *Id.* at 66:19-24.  Ward-Johnson continued, reiterating that Teel is "a very nice person.  I will never take that away from her.  I will never take that away.  Even when she was assertive, she was -- she was assertive, but she wasn't, you know – she's a very nice young woman."  *Id.* at 67:3-6.

Based on the above statements and the record as a whole, the Court concludes that even though Teel's conduct may have been "odd," or even "inappropriate," "inappropriate conduct,

7

without more, is insufficient to establish a hostile work environment claim." *Tucker v. Johnson*, 211 F. Supp. 3d 95, 100 (D.D.C. 2016).  Ward-Johnson's experience working in an environment with and under Teel does not entail conduct so extreme as to support her hostile work environment claim.  Teel's behavior, in other words, falls short of the kind of "severe or pervasive" harassing conduct Ward-Johnson must show in support of her claim.  *Harris*, 510 U.S. at 21–23.  Indeed, Ward-Johnson stated on the record that Teel is a "nice" and "sweet" woman who meant no harm.

A second, independent reason supports the conclusion that Ward-Johnson's hostile work environment claim cannot proceed:  No evidence supports the notion that Teel's odd behavior had anything to do with Ward-Johnson's race or sex.  "[H]ostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class."  *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009).  Even though Ward-Johnson complained about Teel's strange behavior and her odd management style, she never drew a link between Teel's behavior and her race or sex.  The Court therefore concludes, just like the EEOC concluded, that Ward-Johnson has failed to provide any evidence showing that "considerations of race, sex, disability, or retaliatory animus motivated [Teel's] actions toward" her.  EEOC's First Decision, ECF No. 1-2 at 4.

Ward-Johnson pushes back, arguing that Teel has a history of harassing African-American women.  *See* Pl.'s Mem. in Opp'n to Mot. for Summary Judgment, ECF No. 36 at 6.  To support her claim, Ward-Johnson has provided a declaration from a former co-worker, which states that "[t]here was a history of harassment and creating a hostile work environment from Teel" and that Teel's "harassment was against her African-American female employees who worked for her." Declaration of Jennifer Barnes West, ECF No. 36-1 at ¶ 16.  But nowhere does Ward-Johnson

8

even assert, let alone proffer evidence, that Teel subjected Ward-Johnson to a hostile work environment because of Ward-Johnson's race or sex.  Plus, the declaration about Teel's allegedly checkered past puts forth conclusory allegations entirely untethered to the facts of this case.

### IV.     Ward-Johnson's Unlawful Retaliation Claim under Title VII

A separate Title VII provision prohibits an employer from "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a).  To prove a claim of unlawful retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link connects the two to make out a retaliation claim.  *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).  To engage in protected activity, the employee must either participate in a Title VII proceeding or oppose an employer's discriminatory action.  *See Wang v. Washington Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 77 (D.D.C. 2016) ("The 'participation clause,' on the other hand, protects an employee's actions in relation to 'official' or 'legal' Title VII proceedings."); *see id.* at 76 ("The 'opposition clause' protects a broad range of informal actions or statements that employees make in resistance to actions they reasonably perceive to be discriminatory."); *Khatri v. Bd. of Trustees of Univ. of D.C.*, No. CV 19-2644 (RBW), 2021 WL 2403087, at *5 (D.D.C. June 11, 2021).  To suffer an adverse action under the retaliation provision, the action need not be employment-related, but it must be an action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  To establish the requisite causal connection, the plaintiff must show "that the employer had knowledge of the employee's protected activity," *Dave v. Lanier*, 606 F. Supp. 2d 45, 51 (D.D.C. 2009), or that temporal proximity gives rise to a causal inference, *Na'im*, 626 F. Supp. 2d at 78.

Ward-Johnson asserts two theories to support her claim of unlawful retaliation. First, she claims that the Foundation retaliated against her for filing an EEO complaint when it allowed her temporary appointment as an Auditor to expire instead of converting it into a permanent position. *See* Compl. ¶ 58; Pl.'s Dep. at 13:9-13. Second, she contends that the Foundation retaliated against her for having filed an EEO complaint when it did not select her for the Financial Analyst position. Pl.'s Dep. at 13:14-18. The Foundation did not move to dismiss Ward-Johnson's unlawful retaliation claim, which means that the Court has not yet decided whether Ward-Johnson has established a prima facie case of retaliation. The Court, however, need not do so at this juncture because the Foundation has articulated legitimate, nondiscriminatory reasons for (a) not converting her term appointment under the Pathways Program into a permanent position and (b) not hiring her into a Financial Analyst position, and Ward-Johnson has failed to rebut either explanation as mere pretext.

If and when a plaintiff succeeds in establishing a prima facie case of retaliation, the burden then shifts to the employer "to articulate some legitimate, non-[retaliatory] reason" for its actions. *McDonnell McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Ordinarily, courts "need not—and should not—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" where (1) "an employee has suffered an adverse employment action," and (2) "an employer has asserted a legitimate, nondiscriminatory reason for the decision." *Brady v. Office of Sgt. at Arms, U.S. House of Reps.*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, courts determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis" of prior protected activity. *Id.* In resolving this central question, courts look to, among other things, "(1) the plaintiff's prima facie

case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of [retaliatory] statements or attitudes on the part of the employer)." *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012) (internal quotation marks omitted). To survive summary judgment based solely on evidence of pretext, a plaintiff must demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015).

1. As to Ward-Johnson's first theory, the Foundation has proffered a legitimate, nondiscriminatory reason for the decision not to convert her temporary position into a permanent one, and she has not cast plausible doubt on that reason.

In March 2017, President Trump issued an executive order that directed certain agencies to reorganize to improve their "efficiency, effectiveness, and accountability." Exec. Order No. 13,781, Sec. 1, 82 Fed. Reg 13959 (Mar. 16, 2017). In light of that directive, the Foundation argues, it endeavored to restructure and streamline its operations to improve efficiency, effectiveness, and accountability. *See* Declaration of Mathieu Zahui ("Zahui Decl."), ECF No. 32-16 at ¶ 4. As part of that effort, the Foundation determined that Teel could oversee the Foundation's Audit functions on her own. *See* Glin Decl. ¶ 24. For this reason, the Foundation contends, it determined not to convert Ward-Johnson's appointment under the Pathways Program. *Id.* To this day, no one has been hired into the position that Ward-Johnson had once occupied. *Id.* ¶ 27. In other words, the Foundation argues, it did not convert Ward-Johnson's position into a permanent one because of fiscal constraints and because the Foundation eliminated her position.

The elimination of a position and the absence of a vacancy constitute some of the most "common legitimate reasons for discharge." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).

Ward-Johnson argues that a retaliatory motive rather than a budgetary shortfall drove the Foundation's decision. To support this claim, Ward-Johnson points to the temporal proximity between when she filed an EEO complaint and when the Foundation declined to convert her position into a permanent role. But "positive evidence beyond mere proximity is required to defeat the presumption that the [defendant's] proffered explanations are genuine." *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012) (quotation omitted). Not only has Ward-Johnson pointed to no positive evidence, but the proximity between her protected activity and the Foundation's decision not to convert her appointment also fails to share a sufficient temporal connection. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009).

Ward-Johnson contends that she can show retaliation because, according to her, she was "the only Pathways employee who received [a] termination," while "[t]he other Pathways employees remained with the [Foundation] after [her] termination." Pl.'s Opp'n at 13–14. It's true that a "plaintiff can establish pretext masking a [improper] motive by presenting evidence suggesting that the employer treated other employees of a different [protected class] more favorably in the same factual circumstances." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quotation omitted)). But to raise an inference of retaliation based on comparator evidence, Ward-Johnson must demonstrate that "all of the relevant aspects of the employment situation were nearly identical to those of the [other] employee." *Id.* Here, Ward-Johnson has not named any specific comparator, opting instead to reference other Pathways employees more generally. "In the absence of evidence that the comparators were actually

similarly situated to h[er], an inference of falsity or [retaliation] is not reasonable." *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) (quotation omitted).

The Court concludes that Ward-Johnson offers no compelling evidence from which a jury could reasonably conclude that the Foundation's stated reason for Ward-Johnson's non-conversion was nothing more than pretext to cover up retaliatory animus.

2.   Ward-Johnson's second theory of retaliation also fails because the Foundation had a legitimate, non-retaliatory reason for the decision not to hire her into a Financial Analyst position: The Foundation opted to hire the most qualified candidate for the job. And Ward-Johnson has not proffered evidence sufficient to conclude this reason is pretextual.

The Foundation contends, relying upon the declaration of Mathieu Zahui, that it sought to fill the Financial Analyst position with the highest caliber applicant. *See* Zahui Decl. ¶ 6. In particular, Zahui set up a competitive application process designed to attract many qualified applicants. *Id.* ¶ 7. Ward-Johnson applied about a week after the application period commenced. *Id.* ¶ 8. Numerous other qualified applicants sent in applications. *Id.* To ensure the Foundation hired the most qualified applicant, Zahui established a two-tier interview process. *Id.* ¶ 12. Ward-Johnson made it to the first tier. *Id.* ¶ 20. Thereafter, a panel of five interviewers determined that she was not one of the top five candidates, and she therefore did not receive an invite for a second interview. *Id.* The Foundation contends that the candidate who was ultimately hired had substantial transactional accounting and analytical skills. *Id.* ¶ 22. The Foundation did not hire Ward-Johnson, it argues, because she was not the most qualified candidate for the job. Hiring someone else who is more qualified does not generate a Title VII Claim. *See Baylor v. Powell*, 459 F. Supp. 3d 47, 55 (D.D.C. 2020), *aff'd,* 847 F. App'x 7 (D.C. Cir. 2021) (noting that an employer may even select "a candidate who on paper is less qualified for other reasons, such as

13

subjective reactions that emerge in the interview," though "purely subjective explanations" are treated with caution if a plaintiff is obviously more qualified").

Ward-Johnson tries to cast doubt on this conclusion, arguing that a retaliatory motive rather than a desire to hire the best candidate drove the Foundation's hiring decision. As Ward-Johnson sees it, the Foundation's proffered rationale amounts to pretext because she believes that her knowledge of the Foundation made her "a better fit for the new [Financial Analyst] position than anyone they could have hired." Compl. ¶ 55. She, in other words, believes that she possessed better qualifications than the other candidates.

To justify an inference of pretext, Ward-Johnson must show a significant gap between her qualifications and the qualifications of the hired candidate. *See Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). A qualifications gap supports an inference of retaliation only "when the plaintiff is markedly more qualified, substantially more qualified, or significantly better qualified than the successful candidate." *Hamilton v. Geithner*, 666 F.3d 1344, 1552 (D.C. Cir. 2012) (quotation omitted). Here, Ward-Johnson offers no objective evidence demonstrating that she was substantially more qualified for the Financial Analyst position than the ultimate hired candidate. The Court therefore concludes that she cannot rebut the Foundation's legitimate, non-retaliatory reason for not offering her the position.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: February 7, 2022

CARL J. NICHOLS
United States District Judge